STATE OF NEBRASKA, EX REL. CLARK W. ADAIR, RELATOR, V.
JOHN C. DREXEL, COUNTY CLERK, RESPONDENT.

FILED NOVEMBER 11, 1905. No. 14,397.

1. **Statutes: REPEAL.** A repealing clause in an act of the legislature, to the effect that certain specified sections of an existing statute are repealed "so far as the same conflict with" the act last passed, and repealing "all acts and parts of acts in conflict herewith," only repeals such parts of existing statutes as are so repugnant to the act last passed that both cannot stand. Prior statutes are repealed *pro tanto* and to the extent only that they conflict with the act last passed.

2. The title of the act (laws 1905, ch. 66), providing for the selection of certain candidates for public office and certain delegates at a primary election, and regulating such primary, does not embrace nor comprehend legislation concerning the registration of voters for general elections, and which is, in substance and effect, amendatory of existing registration laws.

3. The title to the said act is not broad enough to permit legislation concerning the form and makeup of the official ballots provided for by law to be used at a general election.

4. **Elections: PRIMARIES: CONSTITUTIONAL LAW.** The provisions found in said primary act, limiting the right of parties to participate in a primary election and to have the names of candidates for nomination to appear on the primary ballots to those casting at least one per cent. of the total vote cast at the last election, is a reasonable classification of parties and does not conflict with the constitution guaranteeing freedom in the exercise of the elective franchise.

5. ——: ——: ——. The provisions of the act under consideration, making the right of an elector to participate in a primary election to depend upon his party affiliation, is a legitimate exercise of legislative power, in no way conflicting with the fundamental law guaranteeing freedom in the exercise of the elective franchise.

6. **Candidates: FILING FEES: CONSTITUTIONAL LAW.** It is not competent for the legislature to provide in a primary election law that, before a person eligible to office can be voted for at a primary and have his name appear on a primary ballot, he shall pay a fee for filing nomination papers, computed at one per cent. of the emoluments authorized by law for the office to which such candidate aspires during the term for which he would serve, if elected.

6a. ———: ———: ———. Such provisions are an unwarranted hindrance and impediment to the exercise of the elective franchise, and in conflict with section 22, article I of the constitution.

6b. **Statutes: VALIDITY.** "Where a statute contains provisions which are unconstitutional, if the valid and invalid are not so connected as to be incapable of separation, and the valid portion is a complete act and not dependent upon the part that is void, the latter alone will be disregarded and the rest sustained, if it is manifest that the void part was not an inducement to the legislature to pass the part which is valid." *State v. Moore,* 48 Neb. 870.

6c. ———: ———. The provisions of the act under consideration found to be invalid are *held* not to affect the remainder of the act.

ORIGINAL application for a writ of mandamus to compel respondent to file certificate of nominations and place names of candidates on election ballot. *Writ denied.*

*George A. Magney,* for relator.

*W. W. Slabaugh* and *F. W. Fitch, contra.*

HOLCOMB, C. J.

The relator alleges, in substance, that the socialist party of Douglas county, a county having a population of more than 125,000, held a nominating convention on the 1st day of August, 1905, composed of the members of that party, and nominated candidates for county offices to be voted for at the general election to be held in November following; that a certificate was duly prepared by the officers of such convention of the nominations so made in the manner required by section 129, chapter 26, Compiled Statutes, 1903 (Ann. St. 5768) ; that a request was made of the respondent, the county clerk of said county, to receive and file said certificate of nominations, which he refused to do, giving as a reason for such refusal that such certificate of nominations was illegal and void, because not in conformity with the primary election act passed by the legislature of 1905, known as "Senate File No. 47," providing

for the nomination of candidates for county offices by primary election in counties having a population of more than 125,000 inhabitants. The said act of the legislature is alleged to be void for several reasons, because in conflict with the paramount law. A peremptory writ of mandamus is prayed, compelling the respondent to receive and file said certificate of nominations and place the names of the candidates therein certified to upon the official ballots to be voted at the general election to be held in November, 1905. An alternative writ was issued, to which the respondent interposes a general demurrer.

The act, the validity of which is challenged, is entitled "An act to provide for primary elections in counties having a population of more than 125,000 inhabitants, and to regulate the same; to provide for the nomination of certain candidates for certain offices at such primary elections; to provide for the election of delegates to state, congressional and judicial conventions; to provide for the election of members of the state, congressional and county committees of the several political parties at such primary election; to provide penalties for the violation of the provisions of this act, and to repeal sections 117, 118, 119, 120, 121, 122, 123, 124, 125, 125a, 125b, 125c, 125d, 125e, 125f, 125g, 125h, 125i, 125j, 125k, 125l, 126, 127, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, of chapter 26 of the Compiled Statutes of Nebraska for 1903, so far as the same conflicts with the provisions of this and all acts and parts of acts in conflict herewith." Laws 1905, ch. 66.

1. In determining whether the primary election law is valid, which is attacked by the relator, it seems necessary to first ascertain its general scope and effect, and how, if at all, it affects or has repealed the general laws theretofore in force providing for and regulating the nomination of candidates for public office by party conventions, and printing the names of such nominees on the official ballots to be voted at the general elections at which such offices are filled, such provisions being found in chapter 26, Compiled Statutes, 1903 (Ann. St. 5600-5868), under the title

"Elections." The act under consideration, it will be observed, applies only to counties of more than 125,000 inhabitants. It purports only to repeal sections 117, 118 (Ann. St. 5714, 5715), and the other sections therein mentioned of said chapter 26 "so far as the same conflicts with the provisions" of the act last passed and "all acts and parts of acts in conflict therewith." The general provisions of the election law relative to the nomination of candidates and the placing of their names on the official ballots in all counties of the state of a less population than 125,000, and in the state at large, it was intended by the legislature, should in nowise be disturbed nor interfered with. .Although several sections of the general election law are specifically named as being repealed so far as in conflict with the provisions of the act in question, the legal effect of such a repealing clause is, we apprehend, to repeal only such portions of the general election law as are found to be in conflict with the primary act, and then only to the extent they may be found to be in conflict; that is, the old law may yet remain effective in its application to all counties and conditions not coming within the scope and purview of the primary act, and inapplicable *pro tanto* because of such repeal to counties having the population required before the primary act becomes operative. Although in a measure the repealing clause has the form of an express repeal, yet in legal effect it expresses nothing more than a legislative intention of repealing all prior acts and parts of acts in conflict with the provisions found in the body of the act in which the repealing clause is found. It is obvious that the legislature, in using the language it did, undertook only to provide a complete primary election law for counties having the required population, and otherwise to leave the old order of things as then existing, and to repeal only provisions of law then existing which were repugnant to and inconsistent with the new act. Both the old and the new laws were intended to operate in the spheres to which they were applicable, and to be and remain in force and effect·

iveness wherever applicable. It is only when the provisions of the older law can serve no purpose after the enactment of the new, and are so repugnant to the latter that both cannot stand, that the former must give way in its entirety. Reduced to its last analysis, the repealing clause found in the act we are considering can have no more force and effect than would a repealing clause purporting only to repeal acts and parts of acts in conflict with the one last passed; and this latter form of repeal adds nothing to the rule that the act last passed repeals by implication former acts found to be in irreconcilable conflict therewith. In either case there is a repeal to the extent of any repugnancy, but no further. The insertion, therefore, of such a general repealing clause as we here find adds nothing to the repealing effect of the act. 1 Sutherland, Statutory Construction (2d ed.), sec. 256; *State v. Yardley,* 95 Tenn. 546, 34 L. R. A. 656. We are therefore of the opinion that the act in controversy repeals only such portions of the general election law as are found to be in conflict with its provisions, and then only to the extent of such conflict, and that otherwise all the provisions of the former act remain in full force and effect. It is, of course, to be understood that, in so construing the effect of the repealing clause of the primary act being considered, we are not to lose sight of the other rule, so closely related thereto, to the effect that repeals by implication are not favored, and will be held so only when the conflict is so apparent and pronounced that both provisions cannot stand at the same time.

2. Section 3 of the act under consideration provides that the primary election shall be held on Tuesday, seven weeks preceding the general election in November, and it is also therein provided that "said day shall be the first day for the registration of voters in all cities and such counties where registration is required." In section 19 of the same act there is found, also, the following provisions relating to the subject of the registration of voters: "In cities wherein registration is by law required, no voter shall re-

State v. Drexel.

ceive a primary ballot or be entitled to vote until he shall have first been duly registered as a voter, then and there in the manner provided by law. Provided, that in cities where registration is by law required, no elector shall be permitted to vote the ballot of any party except that which he was registered at the last general registration as affiliating with, unless he be a first voter or shall have moved into the precinct since the last preceding day of registration. For the purpose of providing a system of registration of party affiliation, it shall be the duty of the mayor and city council of each city wherein registration is required, to provide in the registration books used for the purpose of registering persons who are qualified to vote at the next general election, space for the registration of all persons who may desire to participate in any primary election. Such space shall be provided in said registraton books, immediately following the last perpendicular ruled column in such books and shall be headed as follows: 'Party Affiliation.' It shall be the duty of the supervisors of such regular state registration to ask each person who applies to be registered the question, 'What political party do you desire to affiliate with ?' And the name of the political party given with such party so applying to be registered shall be recorded in the column provided in such registration books for that purpose. In case any party applying does not desire to state his party affiliation, he shall not be required to do so, nor shall his failure so to do act as a bar to his registration for the purpose of voting at any election other than a primary election, but shall debar him from voting at any primary election." It is evident that the registration contemplated in the last above quoted provision was more especially for the benefit of the voter who offered to vote at the primary election, and who was then and there required to first register in the manner provided by law. We are advised by counsel that during the pendency of the bill in the legislature, resulting in the enactment in question, other bills were pending having for their object the amendment of the general registration law so that

the first registration day should be coincident with primary election day as fixed in the present act. This possibly explains the incongruity in the language used, and why the time fixed as primary election day is declared to be the first day of registration under the general law, and, also, why, as in section 19, provisions are made for the regis- tration of voters presenting themselves to vote at the pri- mary election before such votes are received, as well as the provisions found therein for recording the name of the political party with which such voter affiliates. Whatever may be the true explanation of these provisions being found in the primary election law under consideration, or what may have been the real purpose of the legislature in in- corporating them in the act, as passed, we think it is mani- fest that they cannot be upheld as a constitutional exercise of legislative authority. These provisions relate to a reg- istration law applicable to general elections rather than to a primary election. They are, manifestly, amenda- tory to the general registration laws. As a registration law the new act is altogether incomplete and imperfect. The provisions regarding the registration of voters, found in the legislation we are considering, are not embraced within, nor comprehended by, the title to the act, and their incorporation therein is therefore in contravention of the fundamental law, which declares: "No bill shall contain more than one subject, and the same shall be clearly ex- pressed in its title. And no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." Const., art. III, sec. 11. The title of the act relates ex- clusively to the subject of primary elections for the nomina- tion of certain candidates and delegates, and to the repeal of existing laws in conflict therewith. The provisions under consideration refer especially to the subject of the registration of voters and is in its effect amendatory of existing statutes. These provisions are foreign to the subject matter embraced in the title of the act. They must therefore, under the rule now well established in this

jurisdiction, as announced in the following cases, be held to be inoperative and void. *Smails v. White,* 4 Neb. 353; *White v. City of Lincoln,* 5 Neb. 505; *Burlington & M. R. R. Co. v. Saunders County,* 9 Neb. 507; *Trumble v. Trumble,* 37 Neb. 340. The law as a whole is not necessarily affected by reason of these void provisions. The act yet remains a complete and a symmetrical whole. Its provisions are capable of enforcement so as to carry into operation the legislative intent, and it can hardly be said that the invalid provisions we have just considered were an inducement for the passage of the remainder. With the general registration law unaffected, as we are constrained to hold it is, the primary act in question serves its full purpose under the provisions found therein for the nomination of candidates and delegates which, by the act, it is sought to regulate and control.

The conclusion reached in respect of the matter last discussed disposes of the objection that only those who have registered at the last general election, except first voters and those moving into the precinct since such election, are permitted to vote at a primary election as therein provided for. It does not appear to have been the legislative intent to exclude from voting at such primary election those not having registered at the last general election, nor do we think it competent for the legislature to do so. Such election must be free to all who are otherwise qualified to participate therein. Where there is a failure to register, when good and sufficient reasons exist, this fact would not justify the disfranchisement of a voter at such primary. *State v. Corner,* 22 Neb. 265. The provisions for registration before voting, as we have seen, contemplated a registration on the same day as the primary election, and, those provisions having been eliminated, no obstacle in the way of registration or the absence thereof can prevent a voter otherwise qualified from casting a ballot at such primary election.

3. Section 32 of the act under consideration declares: "In no case shall the candidates of any political party be

entitled to be designated upon the official election ballot as the candidate of more than one political party, and shall be designated upon the official ballot as the nominee of the party in whose nomination statement his name appears, or in whose certificate of nomination his name appears as the political party with which he affiliates." It is argued that this section undertakes to regulate the manner in which a candidate's name shall appear on the official ballot to be cast at the general election, is amendatory to the general election law with reference to the form and makeup of the official ballot, and is foreign to the subject embraced in the title of the act relating, as it does, to primary elections. Counsel for respondent tacitly concedes the point, but parries by contending that the section refers only to the names of those aspiring to a nomination, and their manner of appearing on the ballots to be voted at the primary, and that it has no relation nor application to the official ballots to be voted at the general election. This latter view does not impress us as being correct. "Official election ballot" and "official ballot," as therein used, obviously refer to the general election ballot, and not to primary ballots. In the definition of terms in the fore part of the act it is said the word "election" shall be construed as a general or city election, as distinguished from a primary election, and that the word "primary" is to be construed as the primary election provided for by this act. In section 29 the same words, "official election ballots," are unquestionably used with reference to the official ballots prepared for the general elections. The section under consideration speaks of "candidates of any political party" and "the nominee of the party," manifestly, we think, in the sense of a person who has been selected by a party as its candidate for a public office, and not with reference to one who is desirous of becoming a candidate and whose name is submitted to the choice of the voters at a primary election. The party's candidate and its nominee cannot be determined until after a choice has been made at a primary. The section

must, we are constrained to say, be held to apply to the appearance of names on the official ballots to be cast at a general election, and not to ballots voted at a primary.

Even though the construction contended for by respondent be permissible, very serious questions would arise as to the power of the legislature to prevent the selection at a primary of the same person as a candidate for a public office by more than one of the political parties, if the voters thereof so chose to do. Of this, however, nothing more need here be said. The act relates to the holding of primary elections. The section under consideration has to do with the form and makeup of the official ballot to be voted at a general election, and is therefore, and for the reasons heretofore fully discussed, not embraced in the subject matter of legislation as comprehended by the title to the act, and is invalid and of no force or effect. It is manifestly amendatory to the law regulating the form of the official ballots, and is also special legislation, in that it would apply only to the official ballots to be voted by the electorate in counties only having a population in excess of 125,000. Its declared invalidity in no way affects the remainder of the act, nor does it appear to be an inducement to its passage.

4. It is contended that the act is void for the reason that its provisions are limited to political parties casting one per cent. or more of the votes cast at the last preceding election. In this connection it is to be borne in mind that, under the general election law as it now stands, and which has stood unchallenged since its adoption, a political party, in order to be entitled to a place for its candidates on the official ballot, must have cast a certain per cent. of the total votes cast at the last preceding election. It is true, provisions are therein found for the nomination of candidates by new political parties and by petition, regardless of the numerical strength of the party supporting such candidates. These provisions are yet preserved, and afford a simple method by which candidates of a party of insufficient numerical strength to participate in a primary may

obtain representation on the official ballot, and whose can-
didate can be voted for as freely as those nominated at
such primary.  The primary law has left these provisions
intact and unaffected, and through them we think none
e ·, contrary to the fundamental law, prevented from freely
and without impediment or hindrance exercising their
right of franchise as guaranteed by the constitution.

It is quite true, we think, that when the legislature
undertakes by laws of this character to regulate and con-
trol the internal affairs of political parties, and to deter-
mine the manner and method of making party nomina-
tions for public offices, it must do so without discrimina-
tion and with equal consideration and benefit to all.  But
it is equally necessary to recognize the existence of politi-
cal parties and to classify them by some convenient stand-
ard.  The law would hardly serve its purpose without
some limitations and restrictions as to a party's numeri-
cal strength.  To say that any number of voters, however
small, may associate themselves together as the embodi-
ment of some political principle or policy of government,
and be entitled to representation on the primary ballot,
is to pave the way to endless confusion, and to destroy in
a large measure the objects sought to be attained by such
a law.  The limitation as to numbers must be fixed at
some point, and the requirement of a numerical strength
of at least one per cent. of the total votes does not seem
unreasonable, nor an unwarranted restriction on the right
of the membership of a political organization to be repre-
sented on the primary election ballots.  In Ohio the same
question arose with reference to the right of party nom-
inees to appear on the official ballot to be voted at the
general election.  The supreme court of that state hold
to the view that "the only question is whether the require-
ment of section 6, that a certified nomination shall be by
a political party which at the last election 'polled at least
one per cent. of the entire vote cast in the state,' is valid.
Certainly, the right of a qualified elector to vote at all
elections is secured by section 1, article V of the constitu-

tion, but that the exercise of the right is subject to such regulations, looking to a fair election, as do not unreasonably or unnecessarily impair it, is a proposition too familiar to call for discussion or citation of authorities. Some restriction upon the right to have nominations printed upon the blanket ballot is necessary to render it practicable. In view of the small ratio of voters required to make a certified nomination, and in view of the right to have nominations made by papers or petition signed for that purpose, and of the right conferred by the act upon every voter to supply the names of all persons for whom he may desire to vote, we cannot say that the exercise of the right is unreasonably impeded." *State v. Poston,* 58 Ohio St. 620, 42 L. R. A. 237.

Indeed, a greater percentage than is here required is held to be a proper and valid exercise of legislative power to classify political parties for such purposes. *State v. Jensen,* 86 Minn. 19, 89 N. W. 1126. The requirement as to numerical strength in the case cited was ten per cent. of the total vote. The court, in speaking on this point, observes:

"We are of the opinion that the legislature may classify political parties with reference to differences in party conditions and numerical strength, and prescribe how each class shall select its candidates, but it cannot do so arbitrarily, and confer upon one class important privileges and partisan advantages and deny them to another class, and hamper it with unfair and unnecessary burdens and restrictions in the selection of its candidates. While it seems to some of us that the percentage of the vote selected as the basis of the classification in this act is larger than necessary, yet it was a question for the legislature, and we are not justified in holding that the classification was arbitrary."

In a later case the same court again expresses itself as follows: "The law is also constructed upon the theory that if, at any time, any political party previously in existence shall have become so enervated that it has no liv-

ing and vital principles to present to the people, and there are no men having sufficient interest to stand as sponsors for and advocate its principles, then there no longer remains a necessity for its recognition as a party for the purpose of selecting nominees at such election." *State v. Johnson,* 87 Minn. 221, 91 N. W. 840. See also *Ladd v. Holmes,* 40 Ore. 167, 66 Pac. 714.

We are of the opinion that the limitation complained of is a reasonable regulation regarding party nominations at primary elections, and that it does not infringe on the constitutional safeguards invoked as an insuperable obstacle to its validity.

5. By section 19 of the act the right of an elector to vote at a primary is made to depend upon his political affiliation with the party for whose candidates he desires to cast a ballot. It is therein provided that no person shall "be entitled to vote at such primary election until he shall have first stated to the judges of said primary election what political party he affiliates with, and whose candidates he supported at the last election, and whose candidates he intends to support at the next election." Provisions are also made for challenging any person offering to vote at such primary election, and for his making oath to the truth of the statements above required as to party affiliation and his support of candidates of the party with whom he is offering to vote. It is difficult to perceive any valid objection to provisions of this character, when applied to a primary election law. These laws replace party nominating conventions. The regulation of the membership of the party and of the right to participate in the nomination of its candidates, in this respect, is taken from the party and placed in the control of the legislature. The integrity of the party and the success of its principles and policies can be best maintained by the participation in its affairs of those only who are at heart in sympathy with the objects and ends to be attained by the organization, and loyal to its tenets. An indiscriminate right to vote at a primary would tend, in

many instances, to thwart the purposes of the organiza-
tion. and destroy the party. A hindrance to one, not a
member of a party, from participating in the selection of
the party's delegates and candidates can in no proper
sense be said to interfere with the free exercise of the
elective franchise as guaranteed by the constitution. All
that is required is that the party offering to vote at the
primary, in order to be entitled to vote with either of
the parties engaged in nominating candidates thereat,
shall have affiliated with such party, supported its candi-
dates generally at the last election, and intend to do so at
the next. Open declaration of allegiance to party is ab-
solutely essential to the proper working of any primary
law. "By his mere offer to vote for delegates to a con-
vention of any party, the elector does, in effect, declare
his intention to support the nominees of such convention,
and the oath is provided for as a guaranty of the truth
of the declaration already made by such offer to vote."
*Rebstock v. Superior Court,* 146 Cal. 308, 316, 80 Pac. 65.

6. The more serious objection to the law, as we view the
act as a whole, is the requirement of section 5 with refer-
ence to the fees to be paid by those who become candi-
dates for nomination for office at the primaries therein
provided for. It is declared that the fees to be paid for
filing nomination papers "shall be computed at one per
cent. of the emoluments authorized by law for the office
to which such candidate aspires, during the term for
which he would serve, if elected." It is to be observed
that the amount thus required to be paid before one can
have his name submitted to the voters at such primary
is fixed arbitrarily, and wholly regardless of the value
of the services performed in filing the nomination papers.
A person aspiring to be nominated for clerk of the dis-
trict court would be required to pay, perhaps, $200. A
candidate for the nomination of county clerk, probably,
$40, other candidates for county offices different sums,
ranging between the two extremes. Is it competent for
the legislature to impose burdens of this character on

those desiring to become candidates for public offices, the nominations for which come within the provisions of the primary law? Can a test of ability to pay fees of the magnitude mentioned be made as to one's right to be voted for at a primary election? It is, at first glance, apparent that these enormous fees prevent many from becoming candidates for party recognition, who otherwise would be willing to yield to a public demand that they become candidates for nomination for a public office. It is said the fees required to be paid in the manner stated are for the purpose of defraying the expenses of the primary. It is not so stated in the act. It is expressly provided the expenses of the primary are to be paid out of the public treasury. It is not, therefore, required of us to pass upon the question of the power of the legislature to require those submitting their names to be voted for at a primary to pay the expenses thereof. It appears from the act itself that there is no relation between the charges made for filing nomination papers, as therein provided, and the expenses incident to a primary election, nor to the value of the services rendered in filing such papers. The charges are arbitrary and unreasonable. They make the pecuniary ability of a person to pay the same a test as to his qualification to become a candidate for a party nomination. The law is as objectionable as if the test were based on a property qualification, or the amount the elector had contributed to the public revenues. The primary election contemplated in the act may not in and of itself be an election within the meaning of the constitutional provisions which guarantee that "all elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." Const., art. I, sec. 22. It is, however, a means to an end. It is a part of the election machinery by which is determined who shall be permitted to have their names appear on the official election ballot as candidates for public office. To say that the voters are free to exercise the elective franchise at a general election for

nominees, in the choice of which unwarranted restrictions and hindrances are interposed, would be a hollow mockery. The right to freely choose candidates for public offices is as valuable as the right to vote for them after they are chosen. Both these rights are safeguarded by the constitutional guaranty of freedom in the exercise of the elective franchise. Say the supreme court of Pennsylvania:

"The importance of the relation of the primary to the general election must be apparent.   *   *   *   Primary elections and nominating conventions have now become a part of our great political system, and are welded and riveted into it so firmly as to be difficult of separation. *   *   * It is as much an election law when it strikes at the fraud at the primary election as when it arrests the fraudulent ballot just as it is ready to be dropped into the box at the general election." *Leonard v. Commonwealth,* 112 Pa. St. 607.

Nominations for public office are to be considered in a dual aspect. There is involved, first, the right of every eligible person to be voted for by any elector who desires to do so, and, second, the right of each elector to exercise choice among all who are eligible.   "The two rights may be protected by the same legislation, but it is important to remember that there is involved, not merely the right of an individual to be a candidate, but the right of every other person to select him for the office; practically the feasibility of independent political movements depends upon the second right.   Now these rights, like the right of suffrage, depend, for their effectual exercise, upon an appointment of time, place, and manner; and the legislature has undoubted power to make regulations for protecting these rights and insuring their enjoyment."   Wigmore, Ballot Reform: Its Constitutionality, 23 Am. Law Rev. 719, 730.

We should not, of course, confuse provisions amounting only to regulation, even though an inconvenience results, with such as, in a substantial way, interfere with the free

exercise of the elective franchise. The provisions under consideration, we are satisfied, go beyond those of regulation, and operate as a substantial impairment of the right of the electorate to freely choose its candidates for public office, and therefore infringe on the constitutional guaranty above quoted. In Michigan a primary law required that a person should be denied a place on the primary ballot as a candidate for nomination unless he should in advance declare on oath the fact that he was a candidate for the office. The supreme court held such provisions to be violative of the constitutional provisions prescribing the oath required of public officers and that no other oath, declaration or test should be required. In the discussion of the principles involved the court very pertinently argue:·

"The provision of this law which requires that, before the name of any candidate shall be placed upon the ballot at the primary election, such candidate shall on oath declare his purpose to become such, excludes the right of the electorate of the party to vote for the nomination of any man who is not sufficiently anxious to fill public station to make such a declaration. The man who may be willing to consent to serve his state or his community in answer to the call of duty when chosen by his fellow citizens to do so is excluded, and the electorate has no opportunity to cast their votes for him.  *  *  *  The authority of the legislature to enact laws for the purpose of securing purity in elections does not include the right to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise. *Attorney General v. Detroit Common Council*, 58 Mich. 213. We cannot escape the conclusion that the provision in question does most seriously impede the electors in the choice of candidates for office, and that it is in conflict with the provisions of section 1 of article 18 of the constitution. It by no means follows that reasonable provision may not be made by legislation for an initiative in placing upon the ballot the names of those to be voted for,

as, for instance, by requiring a petition by a stated percentage of the voters of the party. But this provision goes further, and precludes the voters from choosing as a candidate one who declines to himself seek the office." *Dapper v. Smith*, 138 Mich. 104, 101 N. W. 60.

In the case at bar it is at once apparent that the condition imposed with reference to the payment of what is termed a filing fee most seriously interferes with the right of the electorate to freely choose from among those eligible to office whomsoever they may desire, and that this, for the reasons given, amounts to an unwarranted hindrance and impediment to the free exercise of the elective franchise. This provision must therefore fall. The act as a whole does not, however, necessarily fall because of the part thereof held to be invalid. It yet remains complete and capable of enforcement. Unless these provisions, held to be invalid, were an inducement to the passage of the act, and without which it would not have received legislative sanction, the act, as a whole, should be permitted to stand. Whether or not such invalid provisions were an inducement to the remainder should be gathered from the act itself. Before we would be justified in declaring the whole act void and of no force, it should be made apparent from an inspection of it, having in view the legislative purpose in its adoption, that the invalid portion operated as an inducement to the passage of the law. The rule seems to be "that where the act itself includes two distinct subjects the whole act must be treated as void, from the manifest impossibility of choosing between the two; but that this rule applies only in those cases where it is impossible from an inspection of the act itself to determine which part is void and which valid. When this can be done the rule does not apply, unless it shall appear that the invalid portion was designed as an inducement to pass the valid, so that the whole, taken together, will warrant the belief that the legislature would not have passed the valid part alone." *Trumble v. Trumble*, 37 Neb. 340.

"Where a statute contains provisions which are uncon-

stitutional, if the valid and invalid are not so connected as to be incapable of separation, and the valid portion is a complete act and not dependent upon the part that is void, the latter alone will be disregarded and the rest sustained, if it is manifest that the void part was not an inducement to the legislature to pass the part which is valid." *State v. Moore,* 48 Neb. 870.

Applying the rule deducible from the authorities cited, we are constrained to the view that the invalid portion was not an inducement or consideration for the passage of the valid portions, and that the statute is a valid and enforceable act of the legislature, save with reference to the provisions herein found to contravene some of the provisions of the fundamental law. It follows that the writ prayed for must be denied, and it is accordingly so ordered.

WRIT DENIED.