SMITH v. DOUGLAS COUNTY, NEB.*

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5132.

1. REMOVAL OF CAUSES ☞4—CAUSES REMOVABLE—CONTEST INTER PARTES.

Under Rev. St. Neb. 1913, §§ 6632, 6634, 6635, and in view of sections 1205 and 1212, and Const. art. 6, §§ 1, 16, a proceeding by a Nebraska county to assess inheritance taxes against real and personal property as the property of a decedent which another claimed as surviving joint tenant, is, when it reaches the county court, a contest inter partes, and so is a suit, within the removal statutes.

2. TAXATION ☞878(1)—INHERITANCE TAXES—CONSTRUCTION OF STATUTES.

The Nebraska inheritance tax statute imposes a tax covering only gifts in contemplation of death, legacies, and inheritances; this being particularly true, as Const. art. 3, § 11, confines the provisions of the act to the title, which is "An act to tax gifts, legacies, etc.," and does not include property passing to surviving joint tenant.

3. JOINT TENANCY ☞3—CREATION—INHERITANCE TAXES.

A contract between two brothers, who had carried on their affairs jointly at first, without any partnership agreement, held to make them joint tenants of real and personal property, under Rev. St. Neb. 1913, §§ 8244, 8285, recognizing joint tenancy.

4. JOINT TENANCY ☞6—HOLDER OF LEGAL TITLE.

Where owners of property, with no intention to abandon contracts creating a joint tenancy, permitted, for temporary reasons, for convenient handling, property to be taken and held by either of them or some agent, such property was in no wise removed from the control of the contract, and the holders were trustees for the owners as joint tenants, and upon the death of either of owners the complete equitable title and right to the entire legal title would vest in the survivor, and could be judicially enforced.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Proceedings by the County of Douglas in the State of Nebraska, under the Nebraska inheritance tax statute, against real and personal property claimed by the county to have been the property of Francis Smith, deceased, and claimed by George Warren Smith to belong to him as a surviving joint tenant, which were removed from the state to the federal court. There was a judgment for the County of Douglas, and George Warren Smith brings error. Reversed.

See, also, 242 Fed. 894, 155 C. C. A. 482.

Francis A. Brogan, of Omaha, Neb. (Anan Raymond and A. G. Ellick, both of Omaha, Neb., on the brief), for plaintiff in error.

George E. Bertrand and John H. Grossman, both of Omaha, Neb. (George A. Magney, of Omaha, Neb., on the brief), for defendant in error.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied March 4, 1919.

STONE, Circuit Judge. Writ of error from proceeding under the inheritance tax statute of Nebraska, assessing such a tax against real and personal property within that state claimed by the county of Douglas to have been the property of Francis Smith, deceased, and claimed by plaintiff in error to have been the property of him and Francis Smith as joint tenants. The case presents two propositions: The jurisdiction of the court, and the existence or nonexistence of the claimed joint tenancy.

[1] The county challenges the jurisdiction of the court, claiming that the tax proceeding was not removable from the county court to the United States District Court, because not a "suit," within the meaning of the removal statutes. If the tax proceeding, at the time the petition for removal was filed, was a contest inter partes over property or the payment of money, before a judicial or quasi judicial body empowered to hear and determine the rights of the contestants, it was then removable. Boom Company v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Hess v. Reynolds, 113 U. S. 73, 80, 5 Sup. Ct. 377, 28 L. Ed. 927; Pacific Removal Cases, 115 U. S. 1, 18, 5 Sup. Ct. 1113, 29 L. Ed. 319; Searl v. School District No. 2, 124 U. S. 197, 199, 8 Sup. Ct. 460, 31 L. Ed. 415; Delaware County Commissioners v. Diebold Safe Co., 133 U. S. 473, 486, 10 Sup. Ct. 399, 33 L. Ed. 674; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462. The tax involved the payment of money. The Constitution and statutes of Nebraska establish that this proceeding, when it reached the county court, became a contest inter partes, which that court, acting judicially, was empowered to hear and determine. The method prescribed of levying this tax is for a county judge to appoint an appraiser, who investigates values and reports to the judge. The judge then "forthwith" fixes the value of the property and the amount of the tax, after which he "immediately" gives notice thereof to all known interested parties. Any one dissatisfied with his finding may, within 60 days, appeal to the county court, upon filing bond covering costs and "all taxes that may be fixed by the court." R. S. Nebraska 1913, § 6632. Section 6634 provides that the county courts "shall have jurisdiction to hear and determine all questions in relation to all taxes arising under this article." Section 6635 provides a method by which the county court can take the initiative, if the tax remains unpaid after assessment. It is:

"If it shall appear to the county court that any tax accruing under this article has not been paid according to law, it shall issue a summons commanding the persons or corporation liable to pay such tax or interested in such property to appear before the court on a certain day, not more than three months after the date of such summons, to show cause why such tax should not be paid. The process, practice and pleadings, and the hearing and determination thereof, and the judgment in said court in such cases shall be the same as those now provided or those which may be hereafter provided in probate cases in the county courts of this state and the fees and costs in such cases shall be the same as in probate cases in the county courts of this state."

From the above sections, which are emphasized by other sections of the act, it is clear that the proceeding was ex parte until it reached

the county court; that it became there a controversy inter partes; that the county court was given jurisdiction to hear and determine "all questions in relation" to such taxes, not being confined to the accuracy of the amount assessed; that such action by the court was not merely administrative, but judicial. It should also be noted that county courts in Nebraska are a part of the judicial power of the state (Constitution of 1875, art. 6, § 1), courts of record with certain constitutional original jurisdiction, and such other jurisdiction as given by statute (Constitution of 1875, art. 6, § 16), with a prescribed judicial procedure (R. S. 1913, §§ 1205, 1212).

The conclusion that jurisdiction was properly acquired by removal is not affected by the case of Upshur County v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196. Under the statutes and decisions of the state there involved, the county court was purely an administrative body, with no judicial powers, except probate. The court there held that an appeal from a tax assessment to such an administrative body upon the amount of a tax fixed by an assessor was not a "suit"; but Justice Bradley, after carefully saying that such a proceeding approached "very near to the line of demarcation," defined a distinction which here exists when he said:

"Even an appeal from an assessment, if referred to a court and jury, or merely to a court, to be proceeded on according to judicial methods, may become a suit within the act of Congress."

Also here the amount of the tax was admittedly just, but the legal right to levy any such tax on this property was contested—a controversy in its character suggesting the necessity of judicial settlement. Nor has the decision on the appeal to this court of a companion proceeding (242 Fed. 894, 155 C. C. A. 482) any bearing here. In that case Smith sought to enjoin the Douglas county officials from collecting this inheritance tax. That bill was dismissed for want of equity, because there was a remedy at law. The remedy there in mind was that given by section 10 of the act (Rev. St. Neb. 1913, § 6631), which gave a right to repayment of any such tax erroneously paid. It was not there decided that section 10 provided a remedy which was exclusive of other legal remedies or methods of challenging the validity of the tax.

[2, 3] The sole proposition going to the merits of the case is whether this property is within the purview of the Nebraska inheritance tax statute. This necessitates an examination of the scope of that enactment and of the legal manner in which this property came to plaintiff in error. The title of the statute is "An act to tax gifts, legacies and inheritances in certain cases and to provide for the collection of the same." Section 1 (R. S. Neb. 1913, § 6622) defines the property subject to the tax as follows:

"All property, real, personal and mixed which shall pass by will or by the intestate laws of this state from any person who may die seised or possessed of the same while a resident of this state, or, if decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor, or bargainer or intended to take

effect, in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason thereof any person or body corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax, at the rate hereinafter specified, to be paid to the treasurer of the proper county for the use of the state, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed."

Section 2 (R. S. Neb. 1913, § 6623) outlines the method of assessment and payment when the bequeathed or devised estate involves a life estate. From the above it is clear that the Legislature intended to enact a tax, as its title sets forth, covering only gifts (in contemplation of death), legacies, and inheritances. Besides the scope of the title to an act in Nebraska confines the provisions of the act. Const. of 1875, art. 3, § 11; State v. B. & M. R. R. Co., 60 Neb. 741, 84 N. W. 254; State ex rel. Adair v. Drexel, 74 Neb. 776, 105 N. W. 174.

Did the property here involved pass by such gift, legacy, or inheritance? Smith claims that it came to him in the nature of a joint tenant survivorship, springing from certain contracts between him and the deceased, his brother. The essential facts are fixed. The legal meaning and results of the facts make up the controversy. The outstanding facts necessary to a decision are as hereafter set forth. In 1845, the two brothers, then 19 and 21 years old, started out to make their fortunes together. This united effort accumulated more than $1,000,000 by 1880. During this time there was no formal partnership or agreement, though they worked together under the business style of F. & G. W. Smith, took investments and loans, and kept their bank account in that name. At that time deceased was about 56 years old and married, with no children, while plaintiff in error had remained unmarried. They then became concerned, especially the deceased, with the disposition of this large fortune after death. Fearing that the collateral heirs might be spendthrifts and dissipate the money, and preferring it should go to charities, if such tendencies of these heirs seemed to develop, they decided to arrange matters so that the survivor of the two would take all of the property and assume the burden of its ultimate disposition after his death. To carry out this plan they executed mutual wills covering the property, excepting certain annuities to be paid the wife of the deceased. This arrangement continued until 1902. At that time they were advised by counsel that this plan was cumbersome and would necessitate the estate going through probate. To avoid this, and, as they thought, better carry out their plan, they executed the paper following:

"New York, March 3, 1902.

"The following agreement exists and has existed for more than twenty years between Francis Smith and George Warren Smith for the purpose of making investments for the mutual benefit of us both as joint tenants and not as tenants in common, and have used the style name of F. & G. W. Smith. And in the event of the death of either of us we agree that the survivor may use the name of F. & G. W. Smith and continue to buy and sell securities of all kinds, real and personal, in all manner of ways as has been done heretofore, and do every and all acts whatsoever as fully as when we were both alive. We hold and own all the property which we now possess, both real and personal as joint tenants and not tenants as common with

right of survivorship, and all the property of all kinds whatsoever which we may hereafter acquire is to be held and owned in like manner. And to all whom it may concern we state the foregoing agreement and statements continue in full force and hereby ratify and confirm the same in every particular.

"[Signed]    Francis Smith.
"George Warren Smith."

The wills were then destroyed. A year later they executed another instrument as follows:

"Warrenton, Rockport, Maine, May 16, 1903.

"We, the undersigned, Francis Smith and George Warren Smith, do state and affirm hereby that the agreement now existing between us whereby we hold all our property as joint tenants with right of survivorship and not as tenants in common that it is intended to include all real estate of every kind and nature. All personal property, stocks and bonds, and in fact all real estate and personal property of all kind or kinds whatsoever, which we or either of us now hold, own or possess or may hereafter acquire. The object of the foregoing is to state more implicitly if need be the agreement between us as to the property which we hold or own as joint tenants with right of survivorship and not as tenants in common or that we may hereafter own or acquire.        [Signed]    Francis Smith.
"George Warren Smith."

Under this new plan their stocks, bonds, accounts, and bank account, for the most part, stood in the name of "Francis Smith & George Warren Smith as joint tenants with right of survivorship, and not as tenants in .common." In some instances, including the Nebraska property, for reasons of convenience affecting conveyancing or the like, the title was held in the name of one or the other, or of an agent. For a while a third brother had been in business with them, but this connection had terminated prior to 1902; also the wife of deceased had died some time prior to his death, at which time he was a widower, with no direct descendants.

There is no ground for any claim that the arrangement between the brothers concerning their business and property was fraudulent, with the object of escaping the payment of inheritance taxes. The good faith of their actions is not attacked. The controversy is over the legal status established by those acts. The county contends that this status was a partnership; the plaintiff in error asserts it was a joint tenancy. If the former, there is no question but that one-half of the partnership property (after payment of debts) would be the property of the estate of the deceased, and as such be liable to this inheritance tax. If a joint tenancy, while the property would pass to the survivor upon the death of the other, it would not so pass because of death, but because of the contract for joint tenancy or because of the actual joint tenancy title. It is clear from the testimony that from 1845 the efforts of the brothers were united, and that they earned and held their property together. Whether during that period they contemplated that the survivor should have all of the property is not entirely clear. The circumstances connected with making the wills in 1880 would argue against such a conclusion. However the statement in the testimony of plaintiff in error that the 1902 and 1903 contracts were in line with their original plans, and that those plans never changed, would seem to the contrary. The county accentuates these statements as

meaning that they had no intention of changing from the first relation, which it says, was a partnership. This view of that evidence is not accepted. Whatever the brothers may have had in mind, if anything, before 1880 as to a survivorship, it is certain that at that time they determined upon such, and that such determination was never departed from thereafter, although the method of accomplishing that result was changed. The first method used was mutual wills; the last was the contracts of 1902 and 1903.

It is significant that the sole object of those contracts was to change the method of reaching the same result they had intended from 1880, at least. Not only is this intention to change the method crystal clear, but the new method is defined with care, clearness, and accuracy. The contracts contemplated that the entire property should be held in joint tenancy, with its incident right of survivorship. In fact, that incident was the sole motive of the two contracts. From the date of those contracts, if not before, either brother had the right to have every piece of property placed under that character of title if the laws of the state to which any such property was subject permitted such. The state of Nebraska recognizes joint tenancy. R. S. Neb. 1913, §§ 8244, 8285. The rights of the parties under such a contract would have been and are there enforceable.

[4] When, with no intention to abandon the contracts, they permitted, for temporary reasons of convenient handling, property subject to the laws of Nebraska to be taken and held by either of them, or by some agent, that property was in no wise removed from the control of the contracts. Such holders were trustees for the brothers as joint tenants. Upon the death of either brother the complete equitable title and a right to the entire legal title would vest in the survivor, and could be judicially enforced. The rights and title of plaintiff in error rest upon the solid basis of the contracts. Plaintiff in error secured nothing by gift, legacy, or inheritance. The property did not come within the terms of the Nebraska inheritance tax statute.

The judgment is reversed.