(118 N. W. 29.)

STATE OF NORTH DAKOTA, EX REL. E. R. MONTGOMERY, v. HANS
    ANDERSON AS AUDITOR OF GRAND FORKS COUNTY, NORTH DA-
    KOTA.

Opinion filed October 2, 1908.

**Statutes — Subjects of Legislation — Power of Legislature.**

1. The legislature has the power to legislate on subjects not pro-hibited, either in express terms or by necessary implication, by the constitution.

**Elections — Nomination by Primary Election — Validity of Primary
    Laws.**

2. It is competent for the legislature to provide for the nomina-tion of party candidates for elective offices by a direct vote of the mem-bers of the different political parties at an election held for that pur-pose.

**Elections — Nomination by Primary Election — Regulations — Reasonableness and Uniformity.**

3. While the legislature has the power to provide for nominations by a direct vote, and to prescribe rules and regulations for the conduct of primary elections and the government of political parties, such rules and regulations must be reasonable, and operate on voters and candidates of the same class with substantial equality, but absolute equality in all things is not a necessary requirement.

**Constitutional Law — Judicial Powers—Expediency of Legislation.**

4. The fact that in the opinion of the court, simpler and perhaps more effectual or reasonable rules and regulations might have been provided than the legislature did provide will not alone justify the courts in holding the regulations made invalid.

**Elections — Nomination by Primary Election — Vote Required to Nominate.**

5. Section 12, chapter 109, page 157, Laws 1907 (the primary election law), reads as follows: "If the total vote cast for any party candidate or candidates for any office for which nominations are herein provided or shall equal less than 30 per cent of the total number of votes cast for secretary of state of the political party he or they represented at the last general election, no nomination shall be made in that party or such office, but if 30 per cent or more of such vote is cast and there is more than one candidate, for any such office, the person receiving the highest number of votes shall be declared the nominee of such party for such office; provided, further, that where there is more than one person to be elected to the same office the persons to the number to be elected receiving the highest number of votes cast for such office shall be declared the nominees of the party for such offices." *Held,* (a) that the 30 per cent requirement therein contained applies to county and district offices as well as to other offices; (b) that under its terms candidates of a subdivision of the state for a local office must receive 30 per cent of the party vote of their party cast at the last general election for the candidate of such party for secretary of state within such subdivision, or no nomination is made.

**Elections — Nomination by Primary Election — Vote Required to Nominate.**

6. The 30 per cent requirement in said section is intended (a) to prevent the nomination of candidates to represent a party by accident, or when the party did not intend to make a nomination; (b) to restrain the action of voters, at primary elections, within the parties to which they belong; (c) to define and fix the number of votes, necessary to constitute an expression of the party, and to determine what is the act of a party as a party.

**Elections — Nomination by Primary Election — Vote Required to Nominate — Validity of Requirement.**

> 7. The 30 per cent requirement relates to offices of which there is only one of a kind, and while, in the opinion of the court, some other method might have been provided which was more simple and possibly more reasonable to accomplish the purposes hereinbefore referred to, this matter is not, as a regulation, so unreasonable as to render said provision or requirement invalid, and it is accordingly *held,* that, when only one office of the same name is to be filled at an election, and candidates for nomination for such office at the preceding primary election failed to receive 30 per cent of the party vote designated, no party nomination is made for such office.

**Constitutional Law — Judicial Powers — Expediency of Legislation.**

> 8. Arguments as to the expediency and reasons why the provisions made may not be the most expedient, are properly addressed to the legislature, and will not justify this court, for the reason that the most expedient method has not been provided, in holding the provision of the law in question invalid.

Appeal from District Court, Grand Forks county; *Templeton, J.*

Mandamus by the state, on the relation of E. R. Montgomery, commanding Hans Anderson. as auditor of Grand Forks county, to recognize relator as the duly nominated Democratic candidate for the office of clerk of the district court of that county, or to show cause, etc. From an order sustaining a demurrer to the alternative writ issued, relator appeals.

Affirmed.

*Jeff M. Myers,* for appellant.

*J. B. Wineman,* for respondent.

SPALDING, J.   This action is here on appeal from an order of the district court of Grand Forks county, sustaining a demurrer to the alternative writ of mandamus theretofore issued by that court, commanding the respondent to recognize and treat the relator as the duly nominated Democratic candidate for the office of clerk of the district court of Grand Forks county, to be voted for at the next ensuing general election, or to show cause, etc. The only question raised is the constitutionality of section 12, c. 109, p. 157, Laws 1907, said chapter being the primary election law, and section 12 reading as follows: "If the total vote cast for any party candidate

or candidates for any office for which nominations are herein provided shall equal less than 30 per cent. of the total number of votes cast for Secretary of State of the political party he or they represented at the last general election, no nomination shall be made in that party for such office, but if 30 per cent. or more of such vote is cast and there is more than one candidate for any such office, the person receiving the highest number of votes shall be declared the nominee of such party for such office; provided further, that where there is more than one person to be elected to the same office the persons to the numbers to be elected receiving the highest number of votes cast for such office shall be declared the nominees of the party for such offices."

It is first contended that the 30 per cent. limitation is not intended to apply to candidates for offices to be filled by an electorate or constituency comprising less than the entire voting population of the state; that is, that it does not apply to the nomination of candidates for county and district offices. This contention is based upon the language employed by the Legislature in the phrase "if the total vote cast for any party candidate or candidates for any office for which nominations are herein provided shall equal less than 30 per cent. of the total number of votes cast for Secretary of State of the political party he or they represent at the last general election, no nomination shall be made in that party for such office." It is contended that a literal construction of this provision would require the candidate for a county office merely to receive a vote equal to 30 per cent. of the vote of the whole state for the office of Secretary of State at the last general election. The meaning of this section is not expressed as clearly as it might have been, but it is apparent to us that, considering the purpose of the act, the subjects covered by it, the context and the well-known fact, which must have been in the minds of the legislators, that in no county of the state could there be any probability, if a posibility, of any candidate, or any candidates, for any office receiving 30 per cent. of the total vote of the party in the whole state, that this was not what the Legislature intended. On the contrary, we are satisfied that the intention was, and a fair construction of the section is, that the candidates for an office must receive 30 per cent. of the vote cast for Secretary of State at the last general election by their party within the district or subdivision in which they are candidates; that is, the district or subdivision which the office which they are seeking to

fill represents. As, for example, in a legislative district it must be 30 per cent. of the party vote for Secretary of State cast at the last general election within that particular legislative district.

The second point urged by the appellant is that, if the 30 per cent. limitation clause does not apply to county and district officers, is is an unreasonable and unwarranted exercise by the Legislature of the police powers of the state, and is therefore unconstitutional. In determining this point, it becomes necessary to consider what the legislative assembly was attempting to do, and the object and purpose of this provision as gathered from the language of the section, and the knowledge possessed by the court of contemporaneous history. That the Legislature has the power to legislate on subjects not prohibited, either in express terms or by necessary implication by the Constitution, is so well established that it will not be controverted. This principle is forcibly expressed in Commonwealth ex rel. McCormick v. Reeder, 171 Pa. 505, 33 Atl. 67, 33 L. R. A. 141, wherein the court says: "Whatever the people have not, by their Constitution, restrained themselves from doing, they, through their representatives in the Legislature, may do. This latter body represents their will, just as completely as a constitutional convention, in all matters left by the written Constitution. Certain grants of power very specifically set forth were made by the states to the United States, and these cannot be revoked or destroyed by state legislation. Then come the specific restraints imposed by our own Constitution upon our own Legislature. These must be respected; but, in that wide domain not included in either of these boundaries, the right of the people, through the Legislature, to enact such laws as they choose is absolute. Of the use the people may make of this unrestrained power it is not the business of the courts to inquire. We peruse the expressions of their will in the statute, then examine the Constitution, and ascertain if this instrument says 'Thou shalt not' and if we find no inhibition, then the statute is the law simply because it is the will of the people, and not because it is wise or unwise." It is not contended that the Legislature lacks the power to regulate the nomination of party candidates for office, and provide for holding party conventions or so-called primary elections for that purpose. The only requirements are that the regulations provided shall be just and reasonable, and operate on voters and candidates of the same class with substantial equality. In Kenneweg v. Alleghany Co. Commissioners, 102 Md. 119, 62

Atl. 249, the Court of Appeals of Maryland held that the Legislature had the power to pass a law regulating the primaries of the numerically stronger parties only, and excluding from its provisions the smaller parties, and, among other things, the opinion says: "The General Assembly being then the depositary of all legislative power, except when restrained by the organic law, it follows that it is clothed with full power to enact a primary election law, as there is no provision in the Constitution to deprive it of that authorty." And it holds that power to enact a primary election law is inherent in the Legislature. It is said in State ex rel. McCarthy v. Moore, 87 Minn, 308, 92 N. W. 4, that it cannot be expected that any system can accomplish absolute equality in all things, and that no plan will ever be devised which will place all candidates on a perfectly similar footing.

It is important to consider at the outset what the objects sought to be accomplished by the 30 per cent. provision are. In our opinion they are: (1) To prevent the nomination of candidates to represent a party by accident, or without intention on the part of the voters to nominate; (2) doubtless, as contended, one object is to restrain the action of voters at primary elections within the parties to which they of right belong; (3) that the Legislature sought by the limitation in question to define what constitutes an expression of the party will, or what is the act of the party as a party.

On the first proposition, which leads into the third, our attention has been directed to the results in some subdivisions of the state of the vote at the recent primary. No candidates filed petitions for certain local offices, but in several subdivisions where a party vote equals several hundred, candidates for such offices received two or three or five votes each. To hold that such candidates should be considered nominees of the party on the strength of so insignificant a vote would thwart the purpose of the primary election law as expressed in the first section, and be destructive of all party organization and discipline. It is just such accidents as this that we construe this section as intended to guard against and prevent. In other words, it was the intention of the Legislature in enacting it to secure a fair, just, and unquestionable expression of the voters of a party as to who should be its nominees, and to prevent candidates receiving an insignificant number of votes from posing as representatives of the party by securing the printing of their names upon the party ticket.

The second feature is likewise a legitimate and necessary element in a primary election law. It provides for all parties making nominations at the same time and places, and in meetings presided over by the same officers. It is strenuously argued that when 30 per cent. of the voters have attended the meetings and voted for some of the officers, inasmuch as they cannot call for ballots of more than one party, this purpose is accomplished. There is much force in this argument, but because the Legislature might have provided for a more effectual, and perhaps a more reasonable, method of keeping voters within their own parties than the one they saw fit to provide, will not alone justify this court in holding the provision which was made invalid. It undoubtedly has, as it stands, a tendency in the direction mentioned. The New Jersey court says : "A difference of opinion between the courts and the Legislature as to the expedience of making such a distinction" (that is, a distinction in the method of nomination) "if such a difference existed, could not find expression in any judicial action; this being one of those matters in respect to which the court cannot, as Judge Cooley phrases it, 'run a race with the Legislature.' ". In the same opinion it is said that, "primary elections are so matters of public concern that they are proper objects of legislative oversight; that the question of their reasonable regulation presents a problem in the legislative discretion, the solution of which is solely a legislative function." Hooper v. Stack, 69 N. J. Law, 562, 56 Atl. 1. In Dapper v. Smith, 138 Mich. 104, 101 N. W. 60, the Supreme Court of Michigan in holding an oath, required on the part of the candidate by the primary election law of Michigan, unconstitutional says : "It by no means follows that reasonable provision may not be made by legislation for an initiative in placing on the ballot the names of those to be voted for; as, for instance, by requiring a petition by a stated percentage of the voters of the party."

As we view the purpose of this provision from the consideration which we have been able to give it in the brief time allowed us by the exigency of the occasion, the third proposition is the controlling one, namely, that the Legislature sought, by the limitation in question, to define what constitutes an expression of the party will. There is a marked analogy between the primary election provided for and a political convention. This election, in effect, constitutes political mass conventions of the various parties, composed of voters

of the respective parties, each depositing his ballot in his own precinct instead of at one central point, and there is likewise a marked analogy, in the proceedings under this law, to those of a party convention or conventions. It cannot be doubted that in a party convention its members would have the right and power to adopt rules, and, among other provisions, fix the number or percentage of voters or delegates necessary to constitute a quorum or to express the will of the convention and its members in the nomination of a candidate. We find that some party organizations require only a plurality vote, others a majority, and still others two-thirds or three-fourths of its membership, to nominate. Under the primary system the party does not assemble at one place, and is thereby precluded from making rules to govern its proceedings. Rules or regulations must necessarily be provided by some means. The Legislature has provided such rules. They in all respects correspond to the rules almost uniformly adopted as one of the first steps in the proceedings of a party convention. It has said that to make a nomination for a designated office 30 per cent. of the voters of the party must cast their ballots for some candidate for such office. In other words, if 30 per cent. of the party, as measured by the vote for Secretary of State at the last election, does not act on the nomination of a candidate for a particular office, a quorum of the party is lacking. While the legislative assembly might, and in our opinion could, have provided a simpler, more plainly expressed, and perhaps a more reasonable, method of determining the fact that a party does not care to make a nomination or present a candidate for a particular office, yet to us one object of this provision seems to be to provide a method whereby the members of a political body can express, by their failure to vote on the different candidates for any specific office, their desire to make no nomination for that position. Under the terms of the law, taken all together, they cannot exercise their desire to leave an office unfilled on their party ticket in any other manner. To illustrate: Assume that a candidate of one party for clerk of court, which, so far as the nature of the duties is indicative, is a nonpolitical office, is satisfactory to the mass of voters of all other parties and they desire to nominate no candidate in opposition. No method is provided by the statute by means of which candidates can be prevented from filing petitions if they succeed in securing the number of signatures necessary. An individual succeeds in securing the requisite number

of signers to a petition, gets a few votes, and in the abesnce of some such provision, he becomes the party nominee. The Legislature has said that unless candidates for that office receive 30 per cent. of the party strength, as measured by the vote designated, this failure to vote on that office constitutes a failure of the party to directly express its choice. The law provides specifically no other method for this, or for determining how a party may express its satisfaction with the candidacy of the member of another party, without directly nominating a member of the other party.

The provision of section 601, Rev. Codes 1905, that to enable a party to secure representation on the Australian ballot at the general election it must have cast 5 per cent. of the vote at the next preceding general election was for years, and may now be, in force. Its validity was never questioned in this state. Similar provisions have been upheld in other states wherein the percentages range from 1 to 10. The Legislature saw fit to say that it should take 5 per cent. of the actual vote of the state to constitute a party, or to evidence that a party was actually in existence, and of such respectable numbers as to justify its recognition as a political party. This principle has been sustained in Pennsylvania, Illinois, Kentucky, Ohio, Rhode Island, Nebraska, Massachusetts, Oregon, Minnesota, and perhaps in other states. We see no distinction between the power of the Legislature to prescribe what percentage of the voters of a state shall be deemed a party and its power to say what percentage of the members of a party shall be necessary to evidence that a specific act is the act of a party, or that a certain individual is the candidate of the party. If the Legislature has power to say that it shall require 5 per cent of the total vote of the state to constitute a party, it must certainly have the power to say that it shall require the votes of a definite percentage of the members of a party to evidence the act of the party. In other words, in this instance, the Legislature says that if 71 per cent. of the voters of a party are not sufficiently interested in the different party candidates for nomination for a particular office to vote on it, it is conclusive evidence that the members of that party desire to place no one in nomination for such office.

Few will contend that a provision permitting only 1 per cent. of the voters of the state to nominate for a specified office would furnish any adequate or reasonable expression of the party as to who should represent it on the ticket for such office. On the other

hand, a requirement that every member of the party must vote for candidates at the primary, or nominations are not made, would be clearly unreasonable. A reasonable number must be found somewhere between these two percentages. The Legislature has fixed it at 30 per cent., and if this is not clearly either reasonable or unreasonable in the minds of sane and reasonable men, it is a legislative question, and the court is not justified in declaring the provision invalid. It is argued that, because a candidate may have had nearly votes enough to secure his nomination when the only candidate seeking to represent his party, the few votes lacking should not be permitted, in effect, to nullify the many votes which he may have received, but this is an incident to all elections wherein a majority or any requisite number of votes is necessary to control. It is the last few votes which in every close election prevent the unsuccessful candidate or party from being the successful one. The comparison may be extended by reference to the provisions of the law, which have never been questioned, requiring a certain percentage, or a fixed number of the voters, to sign a petition before a candidate can have his name printed on the official ballot. Can it fairly and justly be said that a candidate who may receive a smaller vote at the primary election than the number of signatures necessary to secure the printing of his name on the official ballot should be the nominee of the party, or that the act of the few voters who may have voted for him should evidence the will of the party as a party? When the members or delegates met in a partisan convention, it was a simple matter for such body to adopt rules for the government of the party and of the members of the convention, but under the primary system, which abrogates party conventions, who can say what shall evidence the act of a party as a party, if not within the province of the Legislature to do so? We do not deem this requirement a restriction on the elective franchise, but rather a legislative expression or definition of what percentage of a party vote is necessary to evidence that an act is the act of the party, or a candidate the candidate of a party.

The provision under discussion may well furnish an incentive to voters to attend the primaries, and in a measure to overcome their indifference. Certainly if the members of a party lack sufficient interest in its welfare and maintenance as an organization to attend the election, they have no reason to complain, and if, having attended and voted for candidates to fill most of the places on their

party ticket, when only a cross is required to express their preference as to another candidate, they fail to make it while in the booth, it would seem to strongly indicate a desire to refrain from placing a party condidate in nomination for that office. This is a contingency which cannot well be reasonably provided against by the legislative assembly, and unless the Legislature has failed to provide the opportunity for an expression of the individual preference of the voter and of the party, we are unable to see that the law is obnoxious to any constitutional provision. In the case of Johnson v. Grand Forks County, 16 N. D. 363, 113 N. W. 1071, which has been cited by both parties, we are treating of the rights of individuals and candidates. The purpose of the provision in question in this proceeding is to protect the party as a political body; and, while the language employed and the regulations established may not, in all respects, be the most expressive or simple, yet we are not prepared to say that the latter are so unreasonable as to render the provision in question invalid. In this connection the remarks of the court in De Walt v. Bradley, 146 Pa. 529, 24 Atl. 185, 15 L. R. A. 771, 28 Am. St. Rep. 814, are pertinent. In discussing an election law, that court says: "The act does not deny to any voter the exercise of the elective franchise because he happens to be the member of a party which at the last general election polled less than 3 per cent. of the entire vote cast. The provision referred to is but a regulation, and we think a reasonable one, in regard to the printing of tickets. The use of official ballots renders it absolutely necessary to make some regulations in regard to nominations; in order to ascertain what names should be printed on the ballot. The right to vote can only be exercised by the individual voter. The right to nominate, flowing necessarily from the right to vote, can only be exercised by a number of voters acting together. Three persons may claim to be a political party, just as the three tailors of Tooley street assumed to be the people of England. It follows, if an official ballot is to be used, nominations must be regulated in some way; otherwise the scheme would be impracticable and the official ballot become the size of a blanket." And in State v. Drexel, 74 Neb. 776, 105 N. W. 174, the Supreme Court of Nebraska says: "But it is equally necessary to recognize the existence of political parties, and to classify them by some convenient standard. The law would hardly serve its purpose without some limitations and

restrictions as to a party's numerical strength. To say that a number of voters, however small, may associate themselves together as the embodiment of some political principle or policy of government, and be entitled to representation on the primary ballot, would pave the way to endless confusion, and to destroy in a large measure the objects sought to be attained by such a law. The limitation as to numbers must be fixed at some point." See, also, Healy v. Wipf (S. D.) 117 N. W. 521.

For these reasons the order of the district court is affirmed.

MORGAN, C. J., concurs.

FISK, J. (dissenting).    I fully concur in what is said in the majority opinion upon relator's first point; nor do I disagree with such opinion as to many other propositions therein discussed, but which I do not consider have any relevancy to the vital question here involved, which is whether the 30 per cent. feature of the primary election law is a legitimate and constitutional enactment. Upon this proposition I am forced to dissent from the views expressed in the majority opinion, and will briefly set forth my reasons for so doing.

Conceding that the objects sought to be accomplished by this percentage clause are as stated in the majority opinion, it is very clear to my mind that all such objects may be fully accomplished by a much less drastic statute. Relator's counsel does not contest either the validity or the propriety of a limitation upon the right to make party nominations by requiring a certain percentage of its members to attend the primary and vote before such party shall become entitled to have its ticket appear upon the official ballot, and for the purpose of discussion he concedes that even a 30 per cent. limitation, when properly applied, might be justified, but his contention is, as stated in his brief, that: "When the required percentage of individual members of a given party have attended the primary, called for their party ticket, and voted, all possible beneficial ends have been accomplished, and any more extended limitation becomes obnoxious to the law as unreasonable, unnecessary, arbitrary, and merely captious interference with the constitutional privilege of the individual citizen, and therefore becomes and is judicially reprehensible." Whether such a limitation, or any limitation which is based upon the vote of the party at a prior general election, is justifiable when properly applied I express no opinion. As I view it, all the

ends sought to be accomplished by requiring a reasonable percentage of the votes cast at the primary to nominate, and this is as far as any Legislature has gone in other states, so far as I am aware.

The specific vice existing in this feature of the law is forcibly illustrated by the particular facts disclosed by the record on this appeal. At the recent primary election in Grand Forks county 650 Democrats, or about 32½ per cent. of the total voting strength of their party, actually attended and voted for certain candidates of their party as such. For some unknown reason, or through indifference, and perhaps because he had no opposition, 27 or about 12 per cent. of such electors failed to vote for relator, thereby reducing his percentage slightly below 30 per cent. The result is, under the holding of the majority of this court, that 88 per cent of those who did vote for relator, or 573 Democrats in said county, are practically disfranchised as to such office, and this without any corresponding benefit to the public. To my mind such a result ought not to be possible. After mature deliberation I am forced to the conclusion that the argument and reasoning of relator's counsel is unanswerable. I can discover no beneficial or reasonable purpose in the 30 per cent. limitation clause aforesaid, except to prevent the members of one political party from participating in the nominations of candidates in other party organizations, and such a result will be just as fully accomplished without extending such limitation to any candidate upon the primary ballot. Under the law each party's ballots are printed separately, and it is impossible for an elector to vote a split ticket. In other words, he is restricted to the party whose ballot he calls for. Hence it is plain that the mischief sought to be remedied by the 30 per cent. limitation clause does not require the application of such clause to each or any candidate; but, if 30 per cent. of the party voters attend the primary, and actually call for and vote any portion of their ticket, they are powerless to participate in any manner in the nominations of other party candidates. The inevitable result, therefore, of the practical working of said provision is to unnecessarily interfere with and render difficult, and in some instances entirely preclude, a party organization from nominating a full or even a partial ticket. It is a matter of common knowledge, of which we must take judicial notice, that at the recent primary election in this state one of the party organizations, with but few exceptions, cast but a very slight vote in excess of 30 per cent. for any of its candidates, and many of its candidates received

less than such percentage. It is not difficult to see that such a result may often happen. A combination of circumstances may easily arise which would defeat any party from nominating a full, and perhaps any, ticket. The history of the primary law in this state shows that the percentage of the electorate of the state who attend such primaries is small when compared with the total number of qualified voters. This may be accounted for in various ways. Quite a respectable per cent. of the voting population take but scant interest in any election, and are to a great extent indifferent as to the exercise of the elective franchise. If left to their own volition, many of them would not go to the polls even at a general election. This class are still more indifferent regarding primary elections. Again the primary takes place at a busy season for the great majority of our citizens, and many of them may feel that they cannot afford to take the time necessary to enable them to attend. Still another reason may be that there is no contest for nominations within a party, and in such a case the primary of such party goes by default, so to speak. Again it may frequently happen that the vote for a party candidate for the office of Secretary of State in certain portions of the state, or throughout the entire state, as was the fact at the last general election, may greatly exceed the normal vote of his party, and thereby render it very difficult or impossible for such party to cast 30 per cent. of such vote at the primary two years later. The per cent. of so-called independent voters, or those who ignore party lines, is so large that such a result is not at all unlikely to happen. The foregoing are matters within the common knowledge of all and should be taken into consideration in determining the reasonableness of the limitation clause in question.

It is idle to argue that the 30 per cent. clause can be justified as a reasonable exercise of legislative power in order to obviate accidental nominations not desired by the party. The party's will is expressed solely by the members thereof who attend the primary, and it is not a legitimate argument to say that those who remain at home or do not attend thereby in any manner give expression to the party will. A holding to the effect that a party, which is recognized by the law as such, cannot make a nomination where the per cent. of those actually attending the primary and voting thereat falls below 30 per cent. of its total vote cast at some time in the past, although every elector therein who attended such primary voted for a par-

ticular candidate as its nominee, is, to my mind, a startling and unheard of principle, and is, I believe, indefensible from a constitutional standpoint. It would be just as unreasonable to say that a candidate at a general election, although he receives a majority of the votes cast, shall not be deemed elected unless he also receives a certain percentage of the total votes cast at some prior election. The general rule in this country is that the will of a majority of those voting shall control.

· It is said in the majority opinion that the controlling purpose of this limitation clause is to define what constitutes an expression of the party will. This, to my mind, is a strained construction, but be that as it may, it is entirely clear that the Legislature, under the guise of defining what shall constitute an expression of the party will, cannot entirely thwart, or in any manner unnecessarily hinder or impede, the expression of such will.

It is also said in the majority opinion that: "There is a marked analogy between the primary election provided for and a political convention. This election, in effect, constitutes political mass conventions of the various parties, composed of the voters of the respective parties, each depositing his ballot in his own precinct instead of at one central point, and there is likewise a marked analogy in the proceedings under this law and those of a party convention or conventions. It cannot be doubted that in a party convention its members would have the right and power to adopt rules, and, among other provisions, fix the number or percentage of voters or delegates necessary to constitute a quorum or to express the will of the convention and its members in the nomination of a candidate." This is all very true if the primary is considered as a mass convention composed of those who attend and participate. It is not true if those who remain at home, as well as those who attend, are to be deemed members thereof. Who ever heard of a mass convention adopting a rule that no nomination shall be made unless the candidate receives a majority or plurality, as the case may be, of the votes of those who stayed away as well as those who attended? Under the practical operation of such provision it is a very easy matter for the dominant party, and for that matter any party having sufficient strength, to completely annihilate all opposition in the future by other party organizations. This can be accomplished by casting enough of its votes in favor of the candidate, or candidates, for Secretary of State of such opposite party, or

parties, to swell his vote to an amount in excess of 70 per cent. of his normal party strength, so that at the succeeding primary such party could not muster the required 30 per cent., even if every one of its voters should attend and vote. We would then have the strange and absurd situation of a legal party organization without the legal power to nominate a single candidate. Such a situation may not only possibly but may quite probably arise. A political party could well afford to sacrifice this merely ministerial office for one term in order to annihilate all future party opposition. A statute which permits such a condition to be brought about is manifestly against public policy and void.

It must be remembered that the right to nominate candidates for office is inseparably connected with the right to vote for such candidates when nominated. The exercise of the elective franchise is the most important right of the citizen, and any law is unconstitutional which unnecessarily and unreasonably restricts, or interferes with, the free exercise thereof. As held by this court in Johnson v. Grand Forks County, 16 N. D. 363, 113 N. W. 1071: "The Legislature has the right to make any reasonable regulations to prevent fraud in the conduct of elections, voting by persons not qualified under the Constitution, and for the speedy conduct of the business incident to elections. The question for courts to determine is whether they go beyond the bounds of reason, and whether they place any restrictions around the exercise of the right of suffrage which limits it arbitrarily or unnecessarily." As said by the Supreme Court of Illinois in the recent case of People v. Board of Election Commissioners, 221 Ill. 9, 77 N. E. 321: "The right to choose candidates for public offices, whose names will be placed upon the official ballot, is as valuable as the right to vote for them after they are chosen, and is of precisely the same nature. There is scarcely a possibility that any person will or can be elected to office under this system unless he shall be chosen at a primary election, and this statute, which provides the methods by which they shall be done, and prescribes and limits the rights of voters and of parties, must be regarded as an integral part of the process of choosing public officers, and as an election law. It is undoubtedly true, as urged by counsel for defendants, that it has become not only proper, but necessary, to provide additional safeguards and protection to the voters at primary elections, to the end that their will may be fully expressed and faithfully and honestly carried out, and any law

having that object in view would naturally commend itself to the lawmaking power. The legitimate purpose of such a law, however, must be to sustain and enforce the provisions of the Constitution and the rights of voters, and not to curtail or subvert them or injuriously restrict such rights." In State v. Drexel, 74 Neb. 776, 105 N. W. 174, the Supreme Court of Nebraska, in speaking upon the same subject, took occasion to say: "To say that the voters are free to exercise the elective franchise at a general election for nominees, in the choice of which unwarranted restrictions and hindrances were interposed, would be a hollow mockery. The right to freely choose candidates for public office is as valuable as the right to vote for them after they are chosen." See, also, the following authorities, inferentially supporting the general doctrine above announced that the rights of nomination and of candidacy are incident to the right of suffrage, and that therefore any unnecessary and unreasonable hindrance or impediment to the exercise of the former rights is, to the same extent, a hindrance and impediment to the exercise of the latter. Johnson v. Grand Forks County, supra; Dapper v. Smith, 138 Mich. 104, 101 N. W. 60. No state, so far as I am able to discover, has any similar provision. Respondent's counsel intimates that the state of Washington requires 40 per cent. to nominate, but upon examination of their primary law I find that a plurality vote of those voting nominates, except as to congressional candidates and those for state offices, when there are four or more candidates, in which event it is, in effect, provided that the electors. shall designate their first and second choice, and if no candidate receives 40 per cent. of the first choice votes cast, then the first and second choice votes for each candidate shall be added together, and ercise o fthe elective franchise, and hence is unconstitutional.

For the foregoing reasons I am constrained to hold that the 30 per cent. clause aforesaid is both an unreasonable and unwarrantable and wholly unnecessary restriction and limitation upon the exercise of the elective franchise, and hence is unconstitutional.