## STATE OF NORTH DAKOTA EX REL. EDWARD S. ALLEN, Petitioner, v. TIMOTHY E. FLAHERTY, County Auditor of Burleigh County, North Dakota, Respondent.

(169 N. W. 93.)

**Primary election law — total vote cast — party candidates for office — percentage required — of vote for governor, secretary of state, and attorney general — nominations — statute — unconstitutional and arbitrary — lacks uniformity — system must be stable and constant throughout the counties of the state.**

Section 862 of the Compiled Laws of 1913, which at a primary election provides that "if the total vote cast for any party candidate or candidates for any office for which nominations are herein provided for shall equal less than 25 per cent of the average total number of votes cast for governor, secretary of state and attorney general of the political party he or they represented at the last general election then no nomination shall be made in that party for such office," is unconstitutional in that its provisions are arbitrary, unnatural, and lack uniformity in the different counties of the state, and does not provide a standard for determining the basis for classification which is stable and constant throughout the counties of the state.

Opinion filed September 20, 1918.

Mandamus to compel the printing the name of petitioner on the official ballot.

Writ ordered issued.

*William Langer,* Attorney General, and *Edward B. Cox,* Assistant Attorney General, for respondent.

*Edward S. Allen,* for petitioner.

Bruce, Ch. J. This is a petition for a writ of mandamus to compel the county auditor of Burleigh county to print the name of petitioner as the Democratic candidate for the office of state's attorney of said Burleigh county on the official ballot at the next general election to be held on the 5th of November, 1918.

The affidavit of petitioner is as follows:

"State of North Dakota } ss.:
"County of Burleigh

"Edward S. Allen being duly sworn according to law on his oath deposes and says that he is the petitioner in the above-entitled proceeding and a party beneficially interested therein; that he now is and during all the times hereinafter mentioned has been a qualified elector of the county of Burleigh in the state of North Dakota and qualified to exercise the duties of the office of state's attorney in and for said Burleigh county; that at the primary election held in said Burleigh county on the 26th day of June, 1918, affiant received on the Democratic ticket 95 votes for the said office of state's attorney, as shown by the return of the votes cast at said primary election by the canvassing board, and that there were cast for other elector or electors on said Democratic ticket for said office 13 votes, as shown by said return, making as shown by said return the number of 108 votes cast for two or more electors for the office of state's attorney on the Democratic ticket; that affiant's name was not printed on said Democratic ticket as a candidate for said office of state's attorney, and that there was no candidate for said office on said ticket by petition; that 25 per cent of the vote for governor, attorney general, and secretary of state at the last general election was 110 votes; that there were over 200 party votes cast for the Democratic ticket at the primary election in Burleigh county held on the 26th day of June, 1918, and that the Democratic party is entitled to a column on the ballot at the next general election. Affiant further says that the canvassing board neglected to state and set forth in their return of the votes cast for the office of said state's attorney the name or names of the person or persons receiving the said 13 votes, and the said canvassing board designated the same as "scattering 13 votes,"—said designation being made, as affiant is informed and believes, because affiant had received by far the highest number of votes on the Democratic ticket for

said office, and the said canvassing board deemed it useless and unnecessary to name the person or persons who had received the said 13 votes. Affiant says that there was at least one person entitled to exercise the duties of said office of state's attorney who received for the said office several, at least, of the said 13 votes, and that affiant was not the only person selected by the Democratic voters as a candidate for nomination for said office at said primary, and therefore that there was more than one person candidates for said nomination and selected as such candidates by the said voters, but that affiant received the highest number of the votes cast by the Democratic voters for the said office. Affiant further says that he has made demand on the said Timothy E. Flaherty, county auditor as aforesaid, requesting that the name of affiant be printed on said Democratic ticket as a candidate for the said office of state's attorney, but the said Timothy E. Flaherty, as county auditor, has refused, and now does refuse to print same as demanded and requested, as shown by said demand, and affidavit of service of same, and said refusal in writing, attached hereto, made a part hereof, and respectfully referred to. Affiant further says that the petitioner in the above-entitled proceeding has no other plain, speedy, and adequate remedy in the ordinary course of the law, and therefore asks that a writ of mandamus issue commanding the said Timothy E. Flaherty, county auditor of said Burleigh county, to print the name of Edward S. Allen on the Democratic ticket for the office of state's attorney to be voted at the next general election to be held in said Burleigh county on the 5th day of November, A. D. 1918.

"It is admitted that 25 per cent of the average total number of votes for the state officers, to wit, governor, secretary of state, and attorney general, at the last general election was a fraction over 109; that there were cast at the primary election held on June 26, 1918, in Burleigh county, 198 party votes; that for the office of state's attorney 108 votes were cast, of which petitioner received 95 votes, and other persons received 13 votes, the canvassing board returning the said 13 votes as "scattering," though they were not divided among 13 different persons; that there were no names printed on the Democratic primary ticket for said office, there being no candidate by petition; that the 95 votes cast for petitioner and the 13 votes cast for the other persons were so received and cast as the voluntary choice and will of the Democratic electors and

voters voting at said primary election, and that petitioner and the others receiving votes for said office were candidates only as made so by being the voluntary choice of the Democratic voters manifested by their writing in the names of petitioner and said others on the Democratic primary ticket.

"The respondent bases his refusal on the provisions of § 862, Comp. Laws 1913, the said auditor contending that the vote cast for each county office at the primary election must equal in number 25 per cent of the average total vote cast for governor, secretary of state, and attorney general at the last general election."

This section is as follows: "If the total vote cast for any party candidate or candidates for any office for which nominations are herein provided for shall equal less than 25 per cent of the average total number of votes cast for governor, secretary of state and attorney general of the political party he or they represented at the last general election then no nomination shall be made in that party for such office, but if 25 per cent or more of such party vote is cast and there is more than one candidate for any such office the person receiving the highest number of votes shall be declared the nominee of such party for such office, provided, further, that where there is more than one person to be elected to the same office the persons to the number to be elected receiving the highest number of votes cast for such office shall be declared the nominees of the party for such offices."

This section is an amendment to § 12 of chapter 109 of the Laws of 1907, which provides:

"If the total vote cast for any party candidate or candidates for any office for which nominations are herein provided for shall equal less than 30 per cent of the total number of votes cast for secretary of state of the political party, he or they represented at the last general election, no nomination shall be made in that party for such office, but if 30 per cent or more of such vote is cast and there is more than one candidate for any such office, the person receiving the highest number of votes shall be declared the nominee of such party for such office; provided, further, that where there is more than one person to be elected to the same office the persons to the number to be elected receiving the highest number of votes cast for such office shall be declared the nominees of the party for such offices."

This amendment was the result of the decision in the case of State ex rel. Dorval v. Hamilton, 20 N. D. 592, 129 N. W. 916, wherein this court expressly overruled its prior holding in the case of State ex rel. Montgomery v. Anderson, 18 N. D. 149, 118 N. W. 22, and held that:

"Under the provisions of the general primary election law, the classification provides by the requirement of § 12, chap. 109, Laws of 1907, to the effect that no nomination shall be made unless the vote cast for state, district, or county offices is at least 30 per cent of the total number of votes cast for the candidate for secretary of state of each political party at the last general election, is arbitrary, unnatural, and lacks uniformity in the different counties of the state, by reason of the fact that the standard provided for determining the basis of classification places the party group authorized to make a nomination in each county in a relation to the actual party strength and to each other that is unstable, inconstant, and without uniformity in the different counties of the state. Such provision of the law is, therefore unconstitutional and void. On this point the holding of State ex rel. Montgomery v. Anderson, supra, is overruled."

In this case the court in its opinion by Ellsworth, J., points out the fact that the vote of a party candidate for secretary of state at a general election, held eighteen months previous to the election in issue, was hardly a proper criterion of the party strength. It, however, went very much further, and for reasons given in its opinion, and in which we fully concur, intimated that the party strength, as represented at the particular primary in controversy, if such strength could be properly established, was a much better criterion. It did not hold that the 30 per cent of the strength at such primary would be unreasonable. It did not, however, intimate how that strength should be ascertained.

The legislature of 1913 sought to obviate the objection raised by this opinion by reducing the per cent to 25 per cent and by making the average total vote for governor, secretary of state, and attorney general at the preceding general election the criterion.

In this, however, we believe it entirely failed, and that the act before us is as vulnerable as its predecessor. It is difficult indeed for us to understand why, with the possibility before it of arriving at a just estimate of the party strength, and in the light of § 2 of chapter 213, of

the Laws of 1911, which provides for a direct canvass by the county assessors and the registration of all persons who are to vote at the primary elections according to their party affiliations, and which clearly shows that a more just and accurate criterion may be had, it should have been deemed necessary to pass any such measure as that which is before us.

Section 862 of the Laws of 1913, which was enacted as § 2 of chapter 222 of the Session Laws of 1913, is an identical copy of chapter 321 of the Session Laws of 1911, and which act, though passed by the legislature, was vetoed by Governor Burke. The reason for this veto was that the act in question would, in the opinion of the governor, bring the average of votes required for a nomination even higher than the percentage required by law, which was held to be unreasonable in the case of State ex rel. Dorval v. Hamilton, supra; and the record which is before us clearly shows that the fears of the governor were well founded, and this in spite of the fact that, instead of the vote for secretary of state being made the criterion, the vote of the governor, the attorney general, and the secretary of state is adopted in its stead. In the general election of 1908 the vote of the governor of Burleigh county was 1,094, that of the secretary of state 677, and that of the attorney general 585. The total vote was 2,356. The average total vote was 785,-33. 25 per cent of 785.33 is 196.25. The vote of secretary of state was 677. 30 per cent of this would make 203.10. According to the figures of the election of 1908, 6.77 more votes would be required for nomination under the original enactment than under the present amendment.

If we take the figures for the general election of 1910, however, we find that the reverse is the situation. The vote for governor was 1,020, that of secretary of state 503, and that of the attorney general 560. The total vote was 2,083. The average total vote would be 694.33. 25 per cent of this would make 173.58. The vote for secretary of state was 503. 30 per cent of this is 150.90. 22.68 more votes would be required for nomination under the amendment than under the original enactment.

When we turn to the general election of 1912, we find that the vote for governor was 768, that of the secretary of state was 90, and that of the attorney general was 609. The total vote was 1,467. The aver-

age total vote was 489.   25 per cent of this makes 122.25.   The vote for secretary of state was 90.   30 per cent of this makes 27.   95.25 more votes, therefore, were required for nomination under the amendment than under the original enactment.

Turning to the general election of 1914, we find that the vote for governor was 797, that of the secretary of state 423, and that of the attorney general 394.   The total vote was 1,614.   The average total vote was 538.   25 per cent of this makes 134.50.   The vote for secretary of state was 423.   30 per cent of this makes 126.90.   7.60 more votes, therefore, were required for a nomination under the amendment than under the original enactment.

Turning to the general election of 1916, we find that the vote of the governor was 470, that of the secretary of state was 344, and that of the attorney general 496.   The total vote was 1,310.   The average total vote was 436.66.   25 per cent of this makes 109.66.   The vote for secretary of state was 344.   30 per cent of this makes 103.20.   5.96 votes, therefore, were required for a nomination under the amendment than under the original enactment.

In the Hamilton Case also the lack of uniformity is sought to be shown by considering the vote at the general election in the year 1908 for secretary of state in the counties of Bottineau, Stark, Morton, and Adams; and it is shown by the opinion that 98 per cent in Bottineau, 93 per cent in Stark, 136 per cent in Morton, and 424 per cent in Adams of the entire strength of the party vote as demonstrated by its vote at the primary election in the year 1910, would have had to be obtained in order to enable the nomination of any county officer whatever.   Such a result, it was held, made the working of the original enactment preposterous and ridiculous, and lacking in uniformity, and prevented the regulation from operating "on voters and candidates of the same class with substantial equality."

The same result follows under the present act, and this even though the average vote of the governor, the secretary of state, and the attorney general is made the criterion, and the percentage required is reduced to 25.

"At the general election of 1908 in Bottineau county the average of the total vote of the candidates for governor, secretary of state, and attorney general was 1,340 votes.   At the primary election of 1910 the highest number of Democratic ballots called for and voted in that coun-

ty was 351. By the application of the 25 per cent rule 335 votes, or 95 per cent of the highest number of that party voting at that election, was necessary to enable it to make a nomination for any county office whatever. In Stark county the average of the total vote of the governor, secretary of state, and attorney general was 507. The Democratic vote at the primary election of 1910 was 150. As 126 votes were necessary for nomination, it required 84 per cent of the party vote cast at this election to nominate. In Morton county the average total vote for said group in 1908 was 1,029. The Democratic vote at the primary election of 1910 was 201. As the number required to nominate was 257, it would require 127 per cent, or 27 per cent more than the entire party vote cast at the primary election, to make a nomination. A discrepancy still more magnified between the party strength as ascertained by the provisions of § 2 of chap. 222, Laws of 1913, and that shown by the practical result of participation in an election, is that returned from Adams county, where the average total of the vote for governor, secretary of state, and attorney general in 1908 was 207. The highest Democratic vote at the primary election of 1910 was 13. The number required to nominate was 51, and in order to make a nomination it was necessary for the Democratic party to cast a vote equivalent to 392 per cent of its entire strength as demonstrated by the vote at the primary election.

"As was said by this court in the Hamilton Case: "As these statistics are selected at random from a list of the counties of the state, it is a fair inference that conditions thus shown to prevail in any county obtain in every county, differing only in degree.'"

As we view the matter, § 862 of the Compiled Laws of 1913 does not meet the objections that are raised in the case of State ex rel. Dorval v. Hamilton, and it is, therefore, unconstitutional.

Section 862 of the Laws of 1913 being unconstitutional, it is clear to us that the petitioner is entitled to have his name placed upon the ballot under the provisions of chapter 212 of the Laws of 1911.

The prayer of the petition is, therefore, granted and the writ of mandamus will issue.

GRACE, J. I concur in the result.

CHRISTIANSON, J. I dissent.