[File No. 6494.]

C. J. MURPHY, as President of the Bar Association of North Da-
kota, an Unincorporated Association, Plaintiff, v. A. C. TOWN-
LEY, J. E. Guldemann, L. D. Peterson, S. A. Paquin, Charles
Joyce, J. A. Wenstrom and W. G. Johnson, Defendants.

(274 N. W. 857.)

Opinion filed September 11, 1937.

*Charles G. Bangert,* for plaintiff.
*William Lemke* and *J. K. Murray,* for defendants.

BURR, J. Application is made to this court to assume original jurisdiction in proceedings seeking to punish the defendants for contempt of court in what is termed the illegal practice of law.

The petition says the defendants "have held themselves out as qualified to practice law in this State, without first having been admitted to practice by this Court and without having paid the license fees required by law; have intruded themselves into the office of and assume to be attorneys and counsellors at law; have associated themselves together with persons duly licensed to practice law in the unlicensed and unlawful practice of law; have represented themselves as men learned in the law and as men who, by training, learning, license and profession, were duly authorized and qualified to counsel, advise and inform citizens of this State as to their legal rights, duties, privileges and liabilities under certain statutes enacted by the Congress of the United States of America and under the laws of this State and during all of said time, and at various places within the State have attempted to interpret such laws and have counselled with and furnished legal counsel, aid and advice, and have rendered legal services by themselves and through and in conjunction with attorneys duly licensed to practice law in this state, to various persons . . . and have given and furnished to such persons, and others, legal advice and counsel with reference to their duties, rights, privileges and liabilities under the laws of the Congress of the United States of America and under the laws of the State of North Dakota, and have advised such persons as to the Court procedure necessary to be taken in securing such claimed rights and privileges, have prepared certain petitions, schedules etc. in connection with bankruptcy proceedings, and have received from such persons so advised and counselled large sums of money and other valuable consideration in payment of such legal services and advice so furnished, rendered and given, all as more fully appears by the Affidavits . . . attached hereto and made a part hereof."

Upon presentation of the complaint to this court an order to show cause was issued, directing the defendants to appear at time and place stated to answer the complaint and show cause why they should not be punished for contempt of court.

562

The defendants appeared and moved to quash the complaint, urging that the facts alleged do not show either civil or criminal contempt nor show any cause of action against them so as to justify the assumption of original jurisdiction; that the court has no jurisdiction of the subject matter set forth in the complaint; that if any court has jurisdiction it is a court of the United States; that the action is not prosecuted by the real parties in interest; and that the "objective sought in the proceedings herein mentioned constitute a violation of that part of the Federal Constitution which guarantees freedom of speech to everyone in the United States."

The defendants answered also, but the issues raised by answer are practically the same.

The theory of the plaintiff, as set forth in the complaint, is that the defendants are practicing law without first securing from this court a license to practice as required by § 811 of the Code, as amended by chapter 143 of the Session Laws of 1933, which provides that: "No person shall be entitled to practice law or act as attorney or counsellor at law in this state unless such person shall secure first a certificate of admission to the bar. Such certificate shall be issued upon payment of the fee provided therefor, and in addition thereto the further payment of the annual license fee of ten dollars. Any member of the bar who has not first paid such license fee *or any other person* or corporation is hereby prohibited from engaging in the practice of law within the state; and upon so doing shall be guilty of a misdemeanor. . . .

Other sections of the Code provide the method of prosecution of those guilty of misdemeanors and prescribe the penalty to be inflicted upon conviction.

Plaintiff urges that because this statute provides for the punishment of anyone violating it, the court is not rendered powerless to punish for contempt, and in support of this contention cites the cases State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95; Rhode Island Bar Asso. v. Automobile Serv. Asso. 55 R. I. 122, 179 A. 139, 100 A.L.R. 226, and People ex rel. Illinois State Bar Asso. v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901.

These cases specifically uphold the right of the court to punish as a contempt of court the practice of law without a license. They appear

to be based upon the theory that the court has the exclusive control of admission to practice, which necessarily includes refusal to grant permission to practice, and that in order to protect the powers of the court in the admission to practice it necessarily follows that the court which admits to practice may of its own volition and through the exercise of its own powers punish those who practice without a license. Yet the Nebraska court recognizes that "prosecution for criminal contempt is governed by and in accordance with the strict rules applicable to criminal prosecution," though it says the contempt action is not strictly speaking a criminal proceeding. State ex rel. Wright v. Barlow, 132 Neb. 166, 271 N. W. 282, 284; Hellerich v. Tyson (Neb.) 271 N. W. 802.

Plaintiff contends that the allegations in the complaints in this and the companion case of Murphy v. Crum, post, 570, 274 N. W. 862, being for the purpose of argument conceded to be true by the motions to quash, establish clearly that the defendants are engaged in the illegal practice of law, and in support of this contention cite numerous cases from various jurisdictions.

In Cain v. Merchants Nat. Bank & T. Co. 66 N. D. 746, 268 N. W. 719, we define the term "practice of law" and show (p. 751) that no one is entitled to practice law unless, in the language of the statute, "such person shall secure first a certificate of admission to the bar." We then show that where one has no such certificate and no right to practice law directly he "cannot do so indirectly by employing a licensed attorney to practice for it (him), as that would be a mere evasion of the law."

If the prosecution be based solely upon the violation of this statute, then the punishment prescribed by the statute is exclusive. The defendants could be prohibited from engaging in the practice and convicted of a misdemeanor.

But plaintiff does not seek to do this by these proceedings. Herein it is sought to have the defendants punished for contempt.

Chapter 35 of the Code of Civil Procedure, being § 8178 to § 8201 inclusive of the Compiled Laws, is the legislative declaration with respect to contempts, and article 1 of the chapter deals with criminal contempts.

This article, being §§ 8178 to 8179 of the Code, deals with what is termed criminal contempt. Section 8179 prescribes the penalty; and § 8178 provides:

"Every court of record shall have power to punish as for a criminal contempt persons guilty of any of the following acts and no other:

"1. Disorderly, contemptuous or insolent behavior committed during its sitting in its immediate view and presence and directly tending to interrupt its proceedings, or to impair the respect due to its authority.

"2. Any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings.

"3. Willful disobedience of any process or order lawfully issued or made by it.

"4. Resistance willfully offered by any person to the lawful order or process of the court.

"5. The contumacious and unlawful refusal to be sworn as a witness; or after being sworn, to answer any legal and proper interrogatory.

"6. The publication of a false or grossly inaccurate report of its proceedings; but no court can punish as a contempt the publication of a true, full and fair report of any trial, argument, decision or other proceeding therein."

These acts strike at the very power and authority of the court itself when engaged in its specific work. They tend to interfere directly with the action of the court and impede the administration of justice. It may well be argued that, irrespective of statute, the department of government in which is vested the judicial power would inherently have the power to put a stop to such proceedings; otherwise, the judicial power could not be exercised effectively. But it is clear the acts charged here do not fall within any of the provisions of this section.

Article 2 of the chapter, being § 8180 of the Compiled Laws, treats of civil contempts and gives to every court of record "power to punish by fine and imprisonment, or either, a neglect or violation of duty or other misconduct by which a right or remedy of a party to a civil ac-

tion or proceeding pending in the court may be defeated, impaired, impeded or prejudiced in the following cases:

"1. . . . . . . . . . . . .

"2. . . . . . . . . . . . .

"3. . . . . . . . . . . . .

"4. A person for assuming to be an attorney, or counselor or other officer of the court and acting as such without authority; . . ."

It is clear the acts charged do not fall within the purview of this section for it is not alleged that there is any civil action or proceeding pending in this court, or, for that matter, in any other court.

It is not necessary for us to determine whether such act forbidden by the quotation from article 2 would be within the inherent power of the court to determine as contempt, independent of statute. The power conferred by statute is confined to a case where there is such a pending action.

If the acts complained of constitute the illegal practice of law, and if such practice is in fact contempt of court, it exists as contempt independent of statute. It is not the claim of the plaintiff that there is any statutory authority for holding such acts to be contempt of court.

It is urged that the illegal practice of law constitutes in itself a contempt of court; that the court has the inherent power to punish for contempt; that as this court is the court vested with the power to admit to practice (Comp. Laws, § 789), it is the court which protects such power, otherwise the power of the court to admit to practice would be rendered nugatory to a large extent; that under this theory of the judicial power being vested in the courts this court has the power to punish for contempt independent of statutory regulation; and that the nature and scope of the acts charged against the defendants are such as to affect the public generally and to make summary action necessary. This general proposition has support in People ex rel. Illinois State Bar Asso. v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901, 906; Re Morse, 98 Vt. 85, 126 A. 550, 36 A.L.R. 527.

Separation of governmental powers is a fundamental theory in state and federal government. Under the provisions of § 85 of the state

constitution, "The judicial power of the state of North Dakota shall be vested in a supreme court, district courts, county courts, justices of the peace, and in such other courts as may be created by law for cities, incorporated towns and villages."

The language of investiture with reference to the court is identical with the investiture of legislative power "in a senate and house of representatives" (Const. § 25) and the executive power in a governor (Const. § 71).

This tripartite division of powers was not an experiment in this state. Our people, as shown by the adoption of the federal constitution, specifically provided for a balance of powers between the coequal departments of government, and intended that within its own department no branch could be dictated to or limited by another, though by a system of checks and balances a method was devised whereby neither could exceed its powers nor encroach upon the province of the other. The principle came from their inherited juridical theories, improved by the experience of the colonies and the observations of political scientists like Locke, Montesquieu, and others. Within its own sphere each department is supreme. State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089. See also Atty. Gen. ex rel. Cook v. O'Neill, 280 Mich. 649, 274 N. W. 445.

"The legislative and judicial . . . are co-ordinate departments of the government, of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of government, but it does not make any one of the three departments subordinate to another, when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the

paramount law, whenever a legislative enactment comes in conflict with it" (quoting from Cooley, Const. Lim. 7th ed. p. 227).

State ex rel. Linde v. Taylor, 33 N. D. 76, 84, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583; Anderson v. Byrne, 62 N. D. 218, 230, 242 N. W. 687.

The constitution does not define the terms "legislative power," "executive power," and "judicial power." These terms had well understood meanings at the time the constitution was adopted and the general scope of these powers as so understood was incorporated in the term as completely as if specifically defined.

The people did not deem it necessary to define every word used in the constitution and therefore did not attempt to define judicial power. They knew it had a well understood meaning, and by the adoption of the constitution they adopted the meaning and its implications. These became in effect constitutional provisions.

This judicial power requires legislative action in many cases to carry it into effect. Section 68 of the constitution provides: "The legislative assembly shall pass all laws necessary to carry into effect the provisions of this constitution."

Where this legislative power is necessary, the action of the legislature is exclusive.

This does not militate against the exercise of judicial power to punish the same act if it be in effect a contempt of court as understood when the Constitution was adopted, for the judicial power necessarily included the right to punish certain acts which directly interfered with the exercise of the power. The people having vested the judicial power in the courts, they vested the power necessary to the proper functioning of courts.

"The power of courts of superior jurisdiction created by the constitution to punish such acts is necessarily inherent in such a court, and arises by implication from the very act of creating the court. A court without this power would be at best a mere debating society. . . . Doubtless, this power may be regulated, and the manner of its exercise prescribed by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal. The deci-

sions on this point are well nigh unanimous." State ex rel. Atty. Gen. v. Circuit Ct. 97 Wis. 1, 72 N. W. 193, 38 L.R.A. 554, 65 Am. St. Rep. 90.

The right and duty of the judicial department to exercise its inherent powers, when the court is created by the constitution itself, is ably discussed in Ex parte McCown, 139 N. C. 95, 51 S. E. 957, 2 L.R.A.(N.S.) 603, and in Holman v. State, 105 Ind. 513, 5 N. E. 556, and by many other authorities. But this cannot be carried to an extreme, otherwise the court would not be restrained in the infliction of punishment except by its own discretion. A study of the cases shows, in the main, this inherent power is exercised in the class of cases included under our statutory definition of criminal contempts. But this court, in determining what is a contempt punishable under this inherent power, could not enlarge it, and punish today as within its inherent power such acts as were not so considered at the time the court was created. Such additional power must have a statutory basis.

In People ex rel. Munsell v. Court of Oyer & Terminer, 101 N. Y. 245, 4 N. E. 259, 54 Am. Rep. 691, the court shows the philosophy underlying criminal contempts. 4 N. E. 260 shows that they are the violations of the "rights of the public as represented by their constituted legal tribunals, and a punishment for the wrong in the interest of public justice. . . . Necessarily, these contempts, in their origin and punishment, partake of the nature of crimes, which are violations of the public law, and end in the vindication of public justice, and hence are named 'criminal contempts.' "

The inherent power of the court to punish for contempt is exercised to prevent the obstruction of the course of justice, to prevent prejudice to the trial of any action or proceeding then pending in court. The court is created for the administration of justice through matters coming before it, and anything which interferes with or obstructs the work of the court is within the inherent power of the court to punish. But this power is not to be extended by the court beyond this field. It is often diffifficult to place the dividing line. The court would be derelict in its duty and false to the defense of the judicial power vested in it by the constitution if it did not exercise this inherent power on all proper occasions. On the other hand, the court must be careful to see that power so lodged in the court is not

extended unduly. The inherent power to punish for contempt does not extend beyond those matters that clearly tend to the obstruction of the course of justice.

This court has from time to time, on appropriate occasions, shown that under the constitution of this state the legislative power is primarily plenary, and constitutions are not grants of, but restrictions upon, such power. The legislature has power to legislate on any subject, unless expressly prohibited by the constitution of this state or by the federal constitution. The legislature is the people speaking. See Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838; State ex rel. Montgomery v. Anderson, 18 N. D. 149, 118 N. W. 22; Baird v. Burke County, 53 N. D. 140, 205 N. W. 17; State v. Ligaarden, 59 N. D. 475, 481, 230 N. W. 729, 70 A.L.R. 126; State v. Norton, 64 N. D. 675, 689, 255 N. W. 787; State ex rel. Haggart v. Nichols, 66 N. D. 355, 361, 265 N. W. 859. Consequently, the legislature has the power to enlarge the summary judicial power of the courts, to denominate as contempts certain acts which are not included within the historic inherent power of the courts.

"The legislature has the right to impose a proper occupational charge." It did so when it enacted § 811 of the Compiled Laws as amended by chapter 143 of the session laws of 1933, being the law requiring a person practicing law to secure a certificate of admission to the bar and to pay the annual license fee. Goer v. Taylor, 51 N. D. 792, 200 N. W. 898. The legislature did not see fit to make the violation of this law contempt of court and therefore did not by this statute extend the powers of the court with reference to contempt. Hence, unless such acts charged come within the inherent power of the court to punish as contempt, this court has no such power. While the cases cited by plaintiff asserting the right of the court to punish as contempt the practice of law without a license are direct and to the point, we cannot agree with the principle.

There is authority for the contention that where the legislature specifically defines what is contempt of court, such legislative action is a limitation upon the power of the court. See State v. Kaiser, 20 Or. 50, 23 P. 964, 8 L.R.A. 584; State v. Tugwell, 19 Wash. 238, 52 P. 1056, 43 L.R.A. 717; State ex rel. Indianapolis Bar Asso. v. Fletcher Trust Co. — Ind. —, 5 N. E. (2d) 538. It is not neces-

sary to discuss this principle. It is not before us for determination. We are satisfied the acts charged as contempt do not come within the inherent power of the court to punish, nor are they based upon any statutory authority to punish for contempt, and, therefore, this court will not assume jurisdiction as requested in order to have the charge of illegal practice of law litigated and determined. If the defendants are illegally practicing law without a license, the statute makes provision for their punishment, and in the case of Cain v. Merchants Nat. Bank & T. Co. 66 N. D. 746, 268 N. W. 719, supra, it is not in any way intimated that an injunctional order will not issue to prevent the illegal practice of law, but "that there is nothing in this record warranting the issuance of an injunctional order." The violation of such an order would present an entirely different question.

We need not determine the other issues raised by defendants. Plaintiff's application is denied.

CHRISTIANSON, Ch. J., and MORRIS, J., concur.

NUESSLE, J., concurs in the result.